ANTHONY S. THOMAS *et ux. vs.* ZONING BOARD OF REVIEW

OF THE TOWN OF BRISTOL.

JULY 18, 1956.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

ANDREWS, J.   This is a petition for a writ of certiorari to

review and quash a decision of the zoning board of review of the town of Bristol denying an application for an exception or variation under the zoning ordinance of said town to allow the construction of a gasoline filling station on land of the petitioners. Pursuant to the writ, the respondent board has certified to this court the record of the proceedings relative to such application.

The petitioners, who are the applicants, own a vacant lot on the east side of Hope street in the town of Bristol. This lot is at the southwesterly end of a residential district C, and borders on a tidewater creek which separates it from the large lot on which is located the Guiteras Junior Memorial High School.

According to the evidence this land was flooded in the hurricane of August 31, 1954 and great damage was done to the structures on nearby property. This was shown, among other ways, by a booklet published by the local newspaper containing photographs of the havoc wrought in Bristol by that hurricane. There was testimony from real estate experts and contractors that the lot was now unsuitable for residence property and that, because of the flooding, banks would not give a mortgage on it.

There was also testimony that the land was suitable only for commercial use and particularly for a gas station. To the north of this property there is an old house in need of extensive repairs which is owned by a clergyman who lived out of the state and who had no objection to the use of the property for business purposes but who did object to its being used for a filling station. The rector and vestry of Trinity Episcopal Church, which is the second building to the north of the lot in question, were in favor of the use of this land as a filling station. In fact they were of the opinion that it would improve the value of the surrounding property.

The petitioners' counsel submitted to the board a paper signed by sixteen taxpayers, whose addresses showed that

they lived in the immediate neighborhood, who stated over their signatures that they were not opposed to the granting of the petition. The record also contains a letter from Roger W. Pigeon of 1277 Hope street opposing this petition particularly because he hoped that the above-mentioned house, which was apparently the oldest in Bristol, would be restored by some association, and he felt that a gas station next to it would not be appropriate.

The objectors who owned commercial property across the street did not appear but were represented by an attorney from Providence. He questioned the validity of the meeting of the vestry of the church, but did not say why. He also expressed the opinion that the gas station would not harmonize with the surroundings. The only thing he said about his clients was that they were negotiating to buy more land near their property and "that a desirable development for Bristol would spring up there." He did not state the nature of this development or why the proposed use of this lot would affect it. The only other objector was the operator of a gas station nearby. Aside from attacking oil companies generally, he stated that as a taxpayer he wished to say that the petitioners knew what they were getting when they bought this property. But it appears from the record that they bought it *before* the 1954 hurricane.

In executive session the board denied the petition saying: "It is the decision of the Zoning Board of Review that the applicants have failed to sustain the burden of proof that the variance sought would not unduly conflict with the public interest as explained in the Bristol Ordinance in the protection of Public Health, Safety or Welfare, and that the Board's decision is further, that the applicants have failed to sustain the burden of satisfying it as to facts upon which it could be determined that a literal enforcement of the provisions of the Zoning Ordinance would result in a peculiar hardship or loss to them of a serious character. Therefore, the petition is denied."

Since the application was considered substantially as a variance under general laws 1938, chapter 342, §8 (c), the only question at issue is: Did the board abuse its discretion in finding that there was no undue hardship? We are satisfied that it did. While no one furnished us with a copy of the zoning ordinance the town solicitor states in his brief without contradiction that the following are the only buildings that can be erected or used in a residence district:

"(1) Two family dwelling. Hotel
(2) Farm. Nursery. Truck garden. Country estate.
(3) Church. School. College. Library. Museum.
(4) Private club, except a club the chief activity of which is a service customarily carried on as a business.
(5) Philanthropic or religious institution, other than a penal or correctional institution. Hospital or sanitarium, other than for the care of the insane or feeble minded and other than for liquor or drug addicts.
(6) Water supply reservoir, tank or filter bed.
(7) Non-commercial park, playground, athletic field, bathing beach or bath house. Any non-commercial outdoor public recreation use.
(8) Commercial or non-commercial golf course, not including a miniature golf course.
(9) Telephone exchange, provided that no public business office and no repair or storage facilities are maintained."

It is apparent that this rather small lot is not adapted to most of these uses and that its location, the effect of hurricanes, and the attitude of bankers will prevent its use for the other uses in this list. In justification of the board's action the argument of its attorney was that if the gas station was put there it would mean that the children from the high school and the members of the church would have to walk by it. We are not impressed by that suggestion, since it does not appear that an unnecessary traffic hazard will be thereby created.

However that may be, it is apparent that only a person

who is financially independent could afford to take the risk of building a dwelling or other permissible building on this lot subject, as it is, to flooding. The blueprint and artist's drawing of the proposed station indicate that it would be able to withstand wind and water much better than the ordinary structure. It thus appears from all the evidence that this property cannot be put to any beneficial use unless a variance is allowed. In our judgment, therefore, the board's decision was erroneous.

The petition for certiorari is granted, the decision of the respondent board is quashed, and the papers and records certified to this court are ordered returned to the respondent board.

*Raymond A. Thomas,* for petitioners.

*Frank L. Martin,* Town Solicitor, for respondent.